IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTOPHER TINSLEY,<br><br>               Plaintiff,<br><br>vs.<br><br><br><br>DORA SCHRIRO, et. al.,<br><br>               Defendants. | No. CV 07-1676-NVW-CRP<br><br>REPORT AND<br><br>RECOMMENDATION |

Pending before this Court is Plaintiff's Request for Preventive Relief/Preliminary Injunction. (Doc 5). Plaintiff's request underlies his Section 1983 claim against Defendants. In his Request for Preventive Relief, Plaintiff argues that a Preliminary Injunction should be granted because he can demonstrate probable success on the merits of the Section 1983 claim. Plaintiff asserts that Defendants acted with deliberate indifference to Plaintiff's safety when they failed to place him in protective segregation in spite of his assertions that he was viewed as an informant, and that there were Security Threat Group ("STG") green light hits placed on his life. Plaintiff also argues that there is a possibility of irreparable injury, because two STGs have placed a hit on his life.

Defendants oppose Plaintiff's Request for Preventive Relief/Preliminary Injunction, contending Plaintiff's likelihood of success on the merits is low. Defendants argue they did not act with deliberate indifference to Plaintiff's safety because they conducted an investigation and found little to no corroboration of Plaintiff's assertions. Defendants also claim there is not a sufficient possibility of harm to merit the granting of a Preliminary Injunction because Plaintiff is currently in maximum custody housing and has little

interaction with other inmates. Defendants stress that this case involves a heightened standard for Preliminary Injunction because a granted motion will change the status quo. For the reasons outlined below, the Magistrate Judge recommends that the District Judge, after his independent review and analysis, deny Plaintiff's Request for Preventive Relief/Preliminary Injunction.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, while residing at the Florence prison complex, voluntarily requested that he be placed in protective segregation on March 26, 2007. (Doc 10, Attachment B, p 4). Earlier in the month of March, Plaintiff, who is a Caucasian, stabbed a Mexican-American inmate through his cell. (Doc 20, Exhibit A, p 4). The stabbing was not sanctioned by the Aryan Brotherhood. (Doc 20, Exhibit A, p 4). Plaintiff alleges that following the unsanctioned stabbing, many of his fellow inmates informed him that two STGs, the Aryan Brotherhood and the Mexican Mafia, had placed a green light hit on him. (Doc 20, Exhibit A, p 4). Plaintiff alleges that these STG threats were one basis for his request for protective segregation. (Doc 20, Exhibit A, p 5). Plaintiff also alleges that he requested to be placed in protective segregation because other inmates believed that he was at one time an informant for the Chandler Police Department, and was involved in the conviction of several other inmates. (Doc 20, Exhibit A, p 5). Plaintiff felt that his safety was in jeopardy because other inmates identified him as a snitch. According to Plaintiff, at nearly every Arizona Department of Corrections ("ADC") complex he was housed at between 2003 and 2007, he was inevitably confronted with the belief that he was previously an informant for the police. (Doc 20, Exhibit A, p 1-4).

Plaintiff notified the ADC of his security concerns in his request for protective segregation, and the ADC subsequently attempted to address those concerns. After Plaintiff requested protective segregation in March, 2007, he was temporarily placed in investigative detention. (Doc 10, Attachment B, p 44). Acting Deputy Warden Yolanda Elliot then determined on March 27, 2007 that a full protective segregation review was required for Plaintiff. (Doc 10, Attachment B, p 45). Corrections Officer IV David Berry then further

recommended that the Criminal Investigation Unit ("CIU") administer a review of Plaintiff's request. (Doc 10, Attachment B, p 43). The Florence CIU employed Investigator Michael Dennison to conduct a protective segregation investigation regarding Plaintiff. (Doc 10, Attachment B, p 5-8). This investigation was ongoing from March 29, 2007 through April 11, 2007. (Doc 10, Attachment B, p 5-8). During the investigation, Plaintiff informed Investigator Dennison that he felt threatened both because of his past as an informant, and because of his unsanctioned assault on an inmate of a different race. (Doc 10, Attachment B, p 5). Investigator Dennison contacted the detective at the Chandler Police Department whom Plaintiff identified as the individual he informed, yet this detective confirmed that Plaintiff had never been an informant for the Police Department. (Doc 10, Attachment B, p 7). An ADC report from May 20, 2003, did confirm that Plaintiff once implicated an accomplice who was ultimately given probation. (Doc 10, Attachment B, p 120).

Deputy Warden Edward L. White reviewed Investigator Dennison's completed report, and on April 18, 2007, recommended alternative placement rather than protective segregation for Plaintiff. (Doc 10, Attachment B, p 33). Warden Carson McWilliams affirmed the Deputy Warden's decision on April 20, 2007, noting that the "threat of risk to [Plaintiff] is serious, but not so serious as to require full protective segregation measures." (Doc 10, Attachment B, p 32).

Upon reviewing Warden McWilliams' recommendation, the Protective Segregation Committee determined on June 4, 2007 that the "degree of risk is Low-Moderate" and subsequently denied Plaintiff's request for protective segregation and approved his return to his original unit. (Doc 10, Attachment B, p 31). On June 8, 2007, Plaintiff submitted an appeal of this decision to Defendant Bennie H. Rollins, the Northern Region Operations Director of the ADC. (Doc 10, Attachment B, p 26-28). Defendant Rollins denied Plaintiff's appeal on July 24, 2007, citing the following factors as relevant in his decision: (1) that there was no corroboration of Plaintiff's claim that he was an informant for a police detective, (2) that there was no corroboration of Plaintiff's claim that there was a STG hit on him, (3) that there was no new information regarding Plaintiff's safety in his appeal, and that Plaintiff's

disciplinary history was of issue, (4) that inmates Plaintiff identified as a threat had already been placed on his Do Not House With ("DNHW") list, and (5) that there was no information provided to compel Defendant Rollins to change the approval of the Committee. (Doc. 10, Attachment B, p 25).

After Defendant Rollins' decision to deny Plaintiff's appeal, on August 27, 2007, Plaintiff sent a letter to Defendant Dora B. Schriro, the Director of the ADC. (Doc 20, Exhibit C, p 1). The letter relayed to Defendant Schriro Plaintiff's concerns for his safety, as well as the procedural history of his request for protective segregation. (Doc 20, Exhibit C, p 1-3).

On August 31, 2007, Plaintiff filed a complaint against Defendants under Section 1983. (Doc 1). While temporarily housed in protective custody, he filed a Request for Preventive Relief/Preliminary Injunction on September 18, 2007. (Doc 5). Plaintiff was returned to the general population at the Florence prison complex on September 19, 2007, where he was classified as a maximum custody inmate. (Doc 21, Exhibit B, p 2). As proof that his safety is at risk, Plaintiff offers that Special Services Unit Sergeant Chavez told him that given his predicament between the two STGs, he would not make it out of prison alive unless placed in protective segregation. (Doc 20, Exhibit 1, p5). Plaintiff also suggests that fellow inmate Kenneth Schwan can testify and corroborate Plaintiff's allegations regarding the STG hits.

Plaintiff made three requests for protective segregation prior to his March 26, 2007 request. His April 30, 2003 and July 16, 2003 requests for protective segregation resulted in alternative placement. (Doc 10, Attachment B, p 4). Plaintiff's June 8, 2004 request for protective segregation was fully denied. (Doc 10, Attachment B, p 4). Plaintiff has been relocated within the ADC system multiple times since his initial incarceration for both protective and disciplinary concerns. Following Plaintiff's first request for protective segregation, he was transferred from the Lewis prison complex to the Douglas prison complex. (Doc 20, Exhibit A, p 2). Following Plaintiff's second request for protective segregation, he was relocated to the Safford prison complex. (Doc 20, Exhibit A, p 2). In late

1 2003, Plaintiff was transferred to the Yuma prison complex, this time as a disciplinary
2 measure for drug and tattoo paraphernalia violations. (Doc 20, Exhibit A, p 2). After
3 subsequently being relocated to the Lewis prison complex, Plaintiff disobeyed a direct order
4 and was transferred to the Florence prison complex in 2004. (Doc 20, Exhibit A, p 3). While
5 at Florence, prison guards found a nail in Plaintiff's cell, and he was accordingly disciplined
6 and moved to a detention unit. (Doc 20, Exhibit A, p 3). While at the Eyman prison complex
7 in 2006, Plaintiff physically assaulted another inmate, and as a result was moved to a higher
8 custody level. (Doc 20, Exhibit A, p 3-4). Plaintiff alleges he conducted this assault in order
9 to receive more protection in higher custody. (Doc 20, Exhibit A, p 4). In January, 2007,
10 Plaintiff moved back to the Florence prison complex, where in March he stabbed a Mexican-
11 American inmate through the bars of his cell. (Doc 20, Exhibit A, p 4). Again, Plaintiff
12 alleges he conducted this assault in order to receive more protection in higher custody. (Doc
13 20, Exhibit A, p 4). Shortly after Plaintiff stabbed the inmate in an adjacent cell, the inmate
14 attempted to retaliate and stab Plaintiff through the bars of his cell. (Doc 20, Exhibit A, p 4).

15 **II. DISCUSSION**

16 Plaintiff seeks a Preliminary Injunction requiring that he be returned to protective
17 segregation pending the outcome of his case. A Preliminary Injunction is available to a
18 plaintiff who can demonstrate either (1) probable success on the merits coupled with the
19 possibility of irreparable harm, or (2) that serious questions are raised and the balance of
20 hardships tips sharply in his favor. *Prudential Real Estate Affiliates v. PPR Realty, Inc.*
21 204 F.3d 867, 874 (9th Cir.2000). "These two formulations represent two points on a
22 sliding scale in which the required degree of irreparable harm increases as the probability
23 of success decreases." *Id.*

24 The burden for the movant requesting a Preliminary Injunction may be higher
25 where, if granted, the injunction will change the status quo. When a "party seeks
26 mandatory preliminary relief that goes well beyond maintaining the status quo *pendente*
27 *lite*, courts should be extremely cautious about issuing a preliminary injunction." *Stanley*
28 *v. University of S. Calif.*, 13 F.3d 1313, 1319 (9th Cir.1994). Mandatory Preliminary

1  Injunctions, as opposed to Prohibitory Preliminary Injunctions, are particularly
2  disfavored, and are issued only where the "facts and law clearly favor the moving party."
3  *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir.1979) (quoting *Martinez v. Mathews*, 533
4  F.2d 1233, 1243 (5th Cir. 1976).  There is a heightened burden of showing that the
5  Preliminary Injunction factors weigh compellingly in the movant's favor when a
6  Preliminary Injunction disturbs the status quo.  *Dominion Video Satellite, Inc. v. EchoStar*
7  *Satellite Corp.*, 269 F.3d 1149, 1154-55 (10th Cir.2001).

**A.  Mandatory Preliminary Injunction**

9        A Preliminary Injunction that will change the status quo if granted should be
10 examined with a higher degree of scrutiny.  In the case pending before this court, Plaintiff
11 was in protective custody when he filed for a Preliminary Injunction, yet was moved back
12 to the general population the following day.  Plaintiff now asks to be moved to protective
13 segregation pending the resolution of his case.
14        Plaintiff asserts that there is no heightened standard for his request for a
15 Preliminary Injunction because Plaintiff was held in protective segregation, or something
16 similar to protective segregation, at the time he filed for the Injunction. Plaintiff further
17 argues that it would give too much power to prison officials if they could simply change
18 the status quo, and thereby heighten the Preliminary Injunction standard, by returning a
19 prisoner to the general population before there is a decision on his Request. Defendants
20 assert that a heightened standard should apply because Plaintiff does in fact request a
21 Mandatory Preliminary Injunction.  Though Plaintiff was in protective custody when he
22 filed, no avenue of appeal remained for Plaintiff.  Defendant Rollins had already made a
23 final decision on Plaintiff's request for protective segregation.  Accordingly, Plaintiff's
24 housing in protective custody at the time of filing was temporary and merely coincidental.
25 At that time Plaintiff was awaiting a return to general population. In addition, the
26 protective custody provided to the Plaintiff at the time of filing differed from placement
27 in a separate protective segregation unit, which Plaintiff now requests.
28        Requiring the ADC to affirmatively remove Plaintiff from general population and

1 place him in a protective segregation unit would upset the status quo.  Plaintiff's
2 argument that he was in protective custody when he filed is not compelling, as his
3 residence in protective custody at the time of filing was only coincidental.  At the time of
4 filing, Plaintiff was in the process of leaving protective custody and moving to general
5 population.  Accordingly, Plaintiff requests a Mandatory Preliminary Injunction, and is
6 thus subject to a heightened scrutiny.  Plaintiff must show that the facts and law clearly
7 favor him.  However, though the heightened standard of a Mandatory Preliminary
8 Injunction is applicable to the case pending before this Court, this conclusion is not
9 necessary for a decision on Plaintiff's Request for Preventive Relief/Preliminary
10 Injunction.  Even in the absence of a heightened standard, Plaintiff does not meet his
11 burden.  Plaintiff fails to show probable success on the merits.

## B.  Probable Success on the Merits

Plaintiff has filed a claim against Defendants under Section 1983.  A Section 1983 claim against a prison official may be sustained under the Eighth Amendment, as prison officials have a duty to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes protecting inmates from violence at the hands of other inmates. *Id.* at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 559 (1st Cir.1988)).  The Supreme Court has held that two requirements must be met in order to sustain a Section 1983 claim against a prison official. *Farmer*, 511 U.S. at 833.  First, the alleged deprivation must be "sufficiently serious" when evaluated objectively. *Id.* at 834.  Second, the prison official must have a "sufficiently culpable state of mind," when evaluated subjectively. *Id.*  In other words, the prison official must act with "deliberate indifference" towards an inmate's health or safety. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)).  The United States Supreme Court equates deliberate indifference to recklessness. *Farmer*, 511 U.S. at 836.  In finding that a prison official acted with deliberate indifference, it must be shown that the prison official is "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  The prison official

1  must not necessarily believe that the inmate will be harmed; rather, it is enough that the
2  prison official "acted or failed to act despite his knowledge of a substantial risk of serious
3  harm." *Id.* at 842.

4  In the case pending before this Court, Plaintiff argues that Defendants acted with
5  deliberate indifference when they denied Plaintiff's request for protective segregation in
6  light of his assertions that other inmates believed he was an informant, and placed green
7  light hits on him. Defendants counter that they did not act with deliberate indifference.
8  When Plaintiff requested protective segregation, Defendants conducted a full
9  investigation of Plaintiff's assertions, and did not deny Plaintiff's request until concluding
10 that there was little corroboration of Plaintiff's concerns. Defendants also concluded that
11 Plaintiff would remain sufficiently safe in his present, maximum custody housing.

12 Defendants act with deliberate indifference if they act or fail to act despite
13 knowledge of a substantial risk of serious harm. When Plaintiff in this case complained
14 about various threats in his request for protective segregation, CIU conducted an
15 investigation to evaluate whether these alleged threats were sufficient to justify placing
16 Plaintiff in protective segregation. There was little to no corroboration of Plaintiff's
17 assertion that he was in danger because other inmates believed he had been an informant
18 and that his testimony led to the conviction of others. Investigator Dennison verified that
19 Plaintiff was never an informant for the detective he identified at the Chandler Police
20 Department. A previous ADC report suggested that at most Plaintiff implicated an
21 accomplice who was eventually given probation. It is unlikely that Plaintiff would
22 experience retaliation on the basis of these facts.

23 Plaintiff argues that even if he is not a snitch, there are still concerns for his safety
24 because other inmates falsely perceive him to be a snitch. While those may be Plaintiff's
25 fears, he presents no evidence to corroborate his assertion that other inmates perceived
26 him as a snitch. Plaintiff's own assertions are the only evidence that he was confronted as
27 an informant at nearly every prison complex to which he was transferred. Plaintiff has
28 not been assaulted based on the belief that he is a snitch. The only violence Plaintiff has

encountered during his time in the ADC system is the violence he initiated in 2006 and 2007 assaults on other inmates.

In their investigation about the threat to Plaintiff's safety, Defendants did not discover any evidence to corroborate Plaintiff's belief that there were green light hits placed on his life. Though Plaintiff anticipates testimony from both Special Services Unit Sergeant Chavez and inmate Kenneth Schwan alleging that he was in danger, at the time Defendants made their decisions there were no reported threats against Plaintiff after Plaintiff's unsanctioned stabbing of a Mexican-American inmate in 2007. The only violence that resulted from the incident was an attempted stabbing by the victim that Plaintiff stabbed a few days earlier.

Thus Defendants, in light of the investigation conducted by CIU and other data provided to them, had little to no corroborated information suggesting that Plaintiff faced a substantial or serious risk of harm. Given the knowledge that Defendants had, they did not respond to Plaintiff's concerns with deliberate indifference. Though Plaintiff's request for protective segregation was denied, Defendants had reason to believe that given Plaintiff's current housing situation, there was only a small possibility that Plaintiff would be confronted by other inmates who might injure him. In fact, inmates who concerned Plaintiff previously were placed on his DNHW list. Furthermore, Plaintiff is a maximum custody inmate, and thus has limited interaction with other inmates. Defendants did not act or fail to act in spite knowledge of a substantial risk of harm. Rather, they acted appropriately in light of the information provided to them. Upon reviewing the same information that Defendants received, other prison officials also concluded that it was appropriate to deny Plaintiff's request for protective segregation. Warden McWilliams, for example, suggested alternative placement, noting that the threats facing Plaintiff were not sufficient to merit placement in a protective segregation unit.

Section 1983 claims against prison officials require that a defendant act with deliberate indifference to an inmate's safety. Defendants, in investigating Plaintiff's

concerns and finding that there was little corroboration of his assertions of potential harm, did not act with deliberate indifference to inmate's safety when they denied his request for protective segregation. Plaintiff, therefore, does not have probable success on the merits of the case at trial. Even without the heightened standard required in a request for a mandatory preliminary injunction, Plaintiff has not made a sufficient showing to suggest a high likelihood that he will succeed on the merits. Because Plaintiff is not able to demonstrate probable success on the merits, it is not necessary to evaluate whether there is a possibility of irreparable harm. Plaintiff must be able to demonstrate both elements in order for a preliminary injunction to be available to him.

## C. Balance of Hardships

When a plaintiff cannot satisfy the two elements necessary for a preliminary injunction, he may still be granted one based on hardship. Plaintiff may be granted a preliminary injunction if he can demonstrate that serious questions are raised and the balance of hardships tips sharply in his favor. *Prudential*, 204 F.3d at 874. In this case, Plaintiff does not raise a frivolous case; serious questions are raised as to the merits of his underlying claim. However, the balance of hardships does not tip sharply in Plaintiff's favor.

Plaintiff argues that the balance of hardships tips sharply in his favor because he is a prisoner with a hit placed on his life. After review of the record, this Court finds no evidence to corroborate Plaintiff's claim that both the Aryan Brotherhood and the Mexican Mafia have placed green light hits on his life. Additionally, Plaintiff is currently housed in a maximum custody facility, and the opportunities for other inmates to assault him are minimal. The ADC placed individuals that Plaintiff specifically identified as threatening to him on his DNHW list. Plaintiff argues that unknown inmates may be a threat to his safety, and his DNHW list does not protect him from unknown individuals. This argument is purely speculative and does not lead to the conclusion that the balance of hardships tips in Plaintiff's favor. Though Plaintiff raises some concerns for his safety, the balance of hardships do not tip sharply in his favor at this time.

1  At trial these factual issues may be more fully developed with live testimony from
2  the parties and key witnesses like Sergeant Chavez and inmate Kenneth Schwan.
3  However, under the present facts it appears that corrections officials investigated Mr.
4  Tinsley's claims promptly and thoroughly, as they had done several times before, and
5  once again determined that an alternative placement, or in this case the highly restrictive
6  current placement, was appropriate.  Based on the current record, the ADC's placement of
7  Plaintiff is not evidence of deliberate indifference.

**III. RECOMMENDATION**

For the reasons outlined above, the Magistrate Judge recommends that the District Judge, after his independent review and analysis, deny Plaintiff's Request for Preventive Relief/Preliminary Injunction. (Doc 5).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation.  If objections are not timely filed, they may be deemed waived.  The parties are advised that any objections filed are to be identified with the following case number: **cv-07-1676-NVW**.

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 26th day of June, 2008.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE